## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| GLENN RODDEY, HELEN JOHNSON, ALICIA DEGRACIA, and WILLIAM KOLACEK, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CAMBER PHARMACEUTICALS INC., HETERO USA INC., and LEGACY PHARMACEUTICAL PACKAGING, LLC, <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** <br><br> **CLASS ACTION** <br><br> Civil Action No. |

Plaintiffs Glenn Roddey, residing at 4442 NW 63rd Drive, Coconut Creek, Florida 33073, Helen Johnson, residing at 2028 Gregory Drive, Tampa, Florida 33613, Alicia Degracia, residing at 919 Waterloo Avenue, El Cajon, California 92019, and William Kolacek, residing at 7 A 72 Lookout Drive, Apple River, Illinois 61001 (collectively, "Plaintiffs"), bring this action on behalf of themselves and all others similarly situated against Defendants Camber Pharmaceuticals Inc. ("Camber"), having its principal place of business at 1031 Centennial Avenue, Piscataway, New Jersey 08854, Hetero USA Inc. ("Hetero"), having its principal place of business at 1035 Centennial Avenue, Piscataway, New Jersey 08854, and Legacy Pharmaceutical Packaging, LLC ("Legacy"), having its principal place of business at 13333 Lakefront Drive, Earth City, MO 63045 (collectively, "Defendants").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

1

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit regarding Defendants Camber and Hetero's manufacturing and distribution of losartan-containing generic prescription medications contaminated with N-Nitroso N-Methyl 4-amino butyric acid ("NMBA"), a carcinogenic and liver-damaging impurity.  Defendant Legacy, which acted as a repackager for losartan medication originally manufactured by Hetero's parent company in India, also manufactured, distributed and sold these contaminated generic medications to Plaintiffs and other similarly-situated consumers.  Each Defendant manufactured, distributed and sold losartan-containing medication contaminated with NMBA over acceptable limits, rendering the medication both dangerous and worthless to Plaintiffs and Class members.

2.      Originally marketed under the brand names Cozaar (Losartan Potassium), Tozaar (Hydrochlorothiazide and Losartan), and Tozam (Amlodipine and Losartan), losartan is a prescription medication mainly used for the treatment of high blood pressure, diabetic kidney disease, congestive heart failure, and left ventricular enlargement, among other issues.  However, due to manufacturing defects originating from overseas laboratories in India, Defendants' generic formulations have become contaminated with NMBA.

3.      NMBA is an organic chemical.  Studies have shown that NMBA can cause cancer in rats such as bladder cancers, which means that NMBA qualifies as a known animal carcinogen and a potential human carcinogen.  NMBA is acutely toxic when consumed orally.

**A. Camber and Hetero recall their losartan-containing medications due to the presence of an impurity, NMBA, resulting from manufacturing defects from an overseas supplier in India**

4.      On February 28, 2019, Defendant Camber announced, through the U.S. Food and Drug Administration ("FDA"), a "recall[] [of] 87 lots of Losartan Tablets USP 25 mg, 50 mg,

and 100 mg to consumer level," resulting from Camber's overseas supplier of active

pharmaceutical ingredients ("API") in India.  Further, the FDA's notice states that "[the] recall

was prompted due to the detection of trace amounts of N-Nitroso N-Methyl 4-amino butyric acid

(NMBA) a possible process impurity or contaminant in an active pharmaceutical ingredient,

manufactured by Hetero Labs Limited, Unit – I (API manufacturer)."  The recall specifically

notes that "NMBA is a potential human carcinogen."

     5.     The recall concerned the following prescriptions:

| NDC | Name and Strength | Count | Lot# | Expiry |
|---|---|---|---|---|
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP17026B | Sep-19 |
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP17050 | Sep-19 |
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP17051 | Sep-19 |
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP17052 | Sep-19 |
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP17053 | Sep-19 |
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP17061 | Oct-19 |
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP18035 | Dec-19 |
| 31722-700-90 | Losartan Potassium Tablets USP 25 mg | 90 | LOP18036 | Dec-19 |
| 31722-700-05 | Losartan Potassium Tablets USP 25 mg | 500 | LOP17026 | Sep-19 |
| 31722-700-10 | Losartan Potassium Tablets USP 25 mg | 1000 | LOP17006 | May-19 |
| 31722-700-10 | Losartan Potassium Tablets USP 25 mg | 1000 | LOP17025 | Sep-19 |
| 31722-700-10 | Losartan Potassium Tablets USP 25 mg | 1000 | LOP17068 | Oct-19 |
| 31722-700-10 | Losartan Potassium Tablets USP 25 mg | 1000 | LOP18037 | Dec-19 |
| 31722-700-10 | Losartan Potassium Tablets USP 25 mg | 1000 | LOP18038 | Dec-19 |
| 31722-700-10 | Losartan Potassium Tablets USP 25 mg | 1000 | LOP18039 | Dec-19 |
| 31722-700-10 | Losartan Potassium Tablets USP 25 mg | 1000 | LOP18057 | Jan-20 |
| 31722-701-30 | Losartan Potassium Tablets USP 50 mg | 30 | LOP17028C | Sep-19 |
| 31722-701-30 | Losartan Potassium Tablets USP 50 mg | 30 | LOP17064A | Nov-19 |
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17027 | Sep-19 |
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17063 | Nov-19 |
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17093 | Nov-19 |
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17094 | Dec-19 |
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17095 | Dec-19 |
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17097A | Dec-19 |

| NDC | Name and Strength | Count | Lot# | Expiry |
|---|---|---|---|---|
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17105 | Dec-19 |
| 31722-701-90 | Losartan Potassium Tablets USP 50 mg | 90 | LOP17107 | Dec-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17004 | Dec-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17028B | Sep-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17048 | Oct-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17049 | Oct-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17056 | Nov-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17073 | Nov-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17074 | Nov-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17076 | Nov-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP17096 | Dec-19 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18077A | Feb-20 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18078 | Feb-20 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18079 | Feb-20 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18080 | Feb-20 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18081 | Mar-20 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18084 | Mar-20 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18095 | Mar-20 |
| 31722-701-10 | Losartan Potassium Tablets USP 50 mg | 1000 | LOP18096 | Mar-20 |
| 31722-702-30 | Losartan Potassium Tablets USP 100 mg | 30 | LOP17011 | Aug-19 |
| 31722-702-30 | Losartan Potassium Tablets USP 100 mg | 30 | LOP17087 | Nov-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP17012 | Aug-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP17013 | Aug-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP17042 | Oct-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP17043 | Oct-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP17044 | Nov-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP17045 | Nov-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP18024 | Dec-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP18025 | Dec-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP18026 | Dec-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP18027 | Dec-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP18028 | Dec-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP18029 | Dec-19 |
| 31722-702-90 | Losartan Potassium Tablets USP 100 mg | 90 | LOP18030 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17005 | May-19 |

| NDC | Name and Strength | Count | Lot# | Expiry |
|-----|-------------------|-------|------|--------|
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17014 | Aug-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17016 | Sep-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17023 | Sep-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17083 | Oct-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17084 | Nov-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17085 | Nov-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP17086 | Nov-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18021 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18022 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18023 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18031 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18032 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18033 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18050 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18051 | Dec-19 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18109 | Mar-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18111 | Mar-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18122 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18123 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18124 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18125 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18126 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18127 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18128 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18129 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18130 | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18131C | Jun-20 |
| 31722-702-10 | Losartan Potassium Tablets USP 100 mg | 1000 | LOP18133 | Jun-20 |

6.     The recall further warns that "[c]onsumers should contact their doctor for further guidance and potential change of treatment before they stop taking the product," and that "[p]harmacies and healthcare facilities that have the product being recalled should stop using and dispensing the product immediately."

**B. Legacy recalls its losartan-containing medications due to the presence of an impurity, NMBA, resulting from manufacturing defects from an overseas supplier in India**

7.     On March 19, 2019, Defendant Legacy announced, through the "FDA", that it was "recalling 40 repackaged lots of Losartan Tablets USP 25 mg, 50 mg, and 100 mg to consumer level."  The FDA's notice states the "recall was prompted due to Camber Pharmaceuticals, Inc. issuing a Voluntary Nationwide Recall of Losartan Tablets, USP, due to the detection of trace amounts of N-Nitroso N-Methyl 4-amino butyric acid (NMBA) a possible process impurity or contaminant in an active pharmaceutical ingredient, manufactured by Hetero Labs Limited, (API manufacturer)."  The recall specifically notes that "NMBA is a potential human carcinogen."

8.     The recall concerned the following prescriptions:

| Legacy NDC | Name and Strength | Count | Legacy Lot# | Expiry |
|---|---|---|---|---|
| 68645-577-54 | Losartan Potassium Tablets USP 25 mg | 30 | 180952 | Oct-19 |
| 68645-577-54 | Losartan Potassium Tablets USP 25 mg | 30 | 180953 | Dec-19 |
| 68645-577-54 | Losartan Potassium Tablets USP 25 mg | 30 | 181086 | Sep-19 |
| 68645-577-54 | Losartan Potassium Tablets USP 25 mg | 30 | 181572 | Jan-20 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 180921 | Sep-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 180922 | Oct-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 180923 | Nov-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 180924 | Nov-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181118 | Nov-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181119 | Oct-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181407 | Nov-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181408 | Dec-19 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181573 | Feb-20 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181725 | Feb-20 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181726 | Feb-20 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181948 | Mar-20 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 181960 | Feb-20 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 182385 | Mar-20 |

| Legacy NDC | Name and Strength | Count | Legacy Lot# | Expiry |
|---|---|---|---|---|
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 182386 | Mar-20 |
| 68645-578-54 | Losartan Potassium Tablets USP 50 mg | 30 | 182387 | Mar-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 180886 | Nov-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 180887 | Dec-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 180888 | Dec-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 180905 | Dec-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181123 | Sep-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181124 | Oct-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181125 | Aug-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181351 | Nov-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181352 | Dec-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181551 | Nov-19 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181628 | June-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181629 | June-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181727 | June-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181728 | June-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181890 | Mar-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181891 | June-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 181897 | June-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 182114 | Mar-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 182119 | June-20 |
| 68645-579-54 | Losartan Potassium Tablets USP 100 mg | 30 | 182120 | June-20 |

9.     The recall further warns that "[c]onsumers should contact their physician or healthcare provider if they have experienced any problems that may be related to taking or using this drug product."

10.     On April 24, 2019, nearly two months after the Camber recall and over a month after its own initial recall, Legacy expanded the recall to include an additional lot.

**C. Defendants' losartan generic medications are not of equal quality and safety to brand-name drugs**

11.     Generic drugs reach the market when the brand-name version of the drug comes

off patent, and other competitors are able to seek approval for, market, and sell bioequivalent versions of the brand-name drug.  These generic equivalents are supposed to be of equal quality and equal safety.  According to the FDA, "[a]ll generic drugs approved by [the] FDA have the same high quality, strength, purity, and stability as brand-name drugs."

12.     Here, the losartan-containing drugs manufactured, distributed, and sold by Camber, Hetero and Legacy are supposed to be equivalent to the brand-name drugs.  However, they are not because they suffer from a manufacturing defect which caused their generic losartan to become contaminated with NMBA.

13.     As such, Camber, Hetero, and Legacy's losartan-containing medications are neither safe nor of equal quality to the brand-name version of the medication.

14.     Camber boasts on its website its commitment to quality, and states that Camber "provide[s] the highest quality generics for our patients and our customers."  The website further states that "[b]oth our American and Indian based manufacturing facilities utilize a quality and compliance process that meets extensive governmental regulations by the US Food and Drug Administration."  Camber warrants on its website that its generic drugs are "copies of brand-name drugs and are the same as those brand name drugs in dosage form, safety, strength, route of administration, quality, performance characteristics and intended use."  As indicated above, however, these representations are false as its losartan medications were contaminated with NMBA.

15.     This is not the first time that Camber and Hetero's manufacturing processes have been called into question by the FDA.  For example, a previous investigation in 2016 by the FDA revealed "significant violations" of current good manufacturing processes for finished pharmaceuticals.  This resulted in a warning letter from the FDA in August 2017.  Further, on

8

August 8, 2018, Defendant Camber announced a voluntary recall of all unexpired lots of its related valsartan medication to the consumer level.  "This recall of multiple batches of Valsartan Tablets was prompted due to the detection of trace amounts of N-Nitrosodimethylamine ('NDMA'), a possible process impurity or contaminant in an active pharmaceutical ingredient, manufactured by Hetero Labs Limited, Unit – I (API manufacturer)."  This latest incident is another unfortunate data point of a pattern of practice of deficient manufacturing practices by Camber and Hetero.

16.    Camber, Hetero, and Legacy already knew that Hetero Labs Limited had problems with its API, yet they continued to sell the recalled medications, causing injury to Plaintiffs and Class members.

**D. Plaintiffs and Class Members were harmed by purchasing and consuming contaminated losartan-containing medications manufactured, distributed, and sold by Defendants**

17.    Plaintiffs and the Class were injured by the full purchase price of their losartan-containing medications.  These medications are worthless, as they are contaminated with carcinogenic and harmful NMBA, and therefore and are not fit for human consumption.  Indeed, Plaintiffs have been instructed to consult with their doctors immediately regarding obtaining a replacement medication.

18.    Plaintiffs bring this action on behalf of themselves and Class Members for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.* ("FDUTPA"); (iv) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*, (v) violation of California's Unfair Competition Law ("UCL"), California Business &

Professions Code §§ 17200, *et seq.*, (vi) violation of California's False Advertising Law

("FAL"), California Business & Professions Code §§ 17500, *et seq.*, (vii) violation of Illinois'

Unfair Practices Act, 805 Ill. Comp. Stat. 505/1, *et seq.*, (viii) unjust enrichment; (ix) fraudulent

concealment; (x) fraud; and (xi) conversion.

## PARTIES

19.     Plaintiff Glenn Roddey is a citizen of Florida who resides in Coconut Creek,

Florida.  During all relevant time periods, Plaintiff Roddey was prescribed losartan-containing

medication manufactured and distributed by Defendants, and sold by Walmart.  After hearing

about the recall, Plaintiff Roddey cross referenced the affected NDC numbers with the NDC

numbers of the medications he purchased, and determined that he was prescribed, purchased, and

had been consuming the contaminated losartan medications manufactured, distributed, and sold

by Defendants Camber, Hetero, and Legacy.  Specifically, Plaintiff Roddey had been purchasing

contaminated losartan medication bearing NDC numbers 68645-579-54 and 31722-702-90.

When picking up his losartan medication from Walmart, Plaintiff Roddey paid a copay for

numerous fills of the contaminated medication.  Plaintiff Roddey originally learned about the

recall by receiving a notice from Walmart.  The Walmart letter, dated February 28, 2019, warned

Plaintiff Roddey that there was an "important voluntary recall concerning this product" due to

the detection of "N-Nitroso N-Methyl 4-amino butyric acid (NMBA), a possible process

impurity or contaminant in the active pharmaceutical ingredient, manufactured by Hetero Labs

Limited, Unit I."  When purchasing his losartan-containing medications from Defendants,

Plaintiff Roddey reviewed the accompanying labels and disclosures, and understood them as

representations and warranties by the manufacturer, distributor, and pharmacy that the

medications were the bioequivalent of the name-brand medication, and were properly

manufactured and free from contaminants and defects.  Plaintiff Roddey relied on these

representations and warranties in deciding to purchase his losartan-containing medications from

Defendants, and these representations and warranties were part of the basis of the bargain, in that

he would not have purchased his losartan-containing medications from Defendants if he had

known that they were not, in fact, the bioequivalent of the name-brand medication and were not

properly manufactured and free from contaminants and defects.   Plaintiff Roddey also

understood that in making the sale, Walmart was acting with the knowledge and approval of

Camber, Hetero and Legacy and/or as the agent of Camber, Hetero and Legacy.  Plaintiff

Roddey also understood that each purchase involved a direct transaction between himself and

Camber, Hetero and Legacy, because his medication came with packaging and other materials

prepared by Camber, Hetero and Legacy, including representations and warranties that his

medications were bioequivalent to the name-brand medication and were properly manufactured

and free from contaminants and defects.

20.     Plaintiff Helen Johnson is a citizen of Florida who resides in Tampa, Florida.

During all relevant time periods, Plaintiff Johnson was prescribed contaminated losartan-

containing medications manufactured, distributed and sold by Camber and Hetero.  Specifically,

Plaintiff Johnson was prescribed and purchased losartan medication bearing NDC number

31722-701-90, a 50 mg dose.  When filling her prescription on February 11, 2019, Plaintiff

Johnson paid a copay of $10.00 for the contaminated medication.  After filling her prescription,

Plaintiff Johnson received a letter from Walmart indicating that her medication was being

recalled due to NMBA contamination, and instructing her to consult with her physician regarding

alternative treatment options.  When purchasing her losartan-containing medication from

Defendants Camber and Hetero, Plaintiff Johnson reviewed the accompanying labels and

disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the medication was the bioequivalent of the name-brand medication, and was properly manufactured and free from contaminants and defects.  Plaintiff Johnson relied on these representations and warranties in deciding to purchase her losartan-containing medication from Defendants Camber and Hetero, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased her losartan-containing medication from Defendants if she had known that they were not, in fact, the bioequivalent of the name-brand medication and were not properly manufactured and free from contaminants and defects.  Plaintiff Johnson also understood that in making the sale, Walmart was acting with the knowledge and approval of Camber and Hetero and/or as the agent of Camber and Hetero.  Plaintiff Johnson also understood that her purchase involved a direct transaction between herself and Camber and Hetero, because her medication came with packaging and other materials prepared by Camber and Hetero, including representations and warranties that her medication was the bioequivalent of the name-brand medication and was properly manufactured and free from contaminants and defects.

21.     Plaintiff Alicia Degracia is a citizen of California who resides in El Cajon, California.  During all relevant time periods, Plaintiff Degracia was prescribed losartan-containing medication manufactured by Defendants Camber and Hetero, and repackaged and distributed by Defendant Legacy, and sold by Walmart.  On August 23, 2018, November 2, 2018, and February 5, 2019, Plaintiff Degracia purchased losartan-containing medication at a 100 mg dose, bearing NDC number 68645-0579-54.  Plaintiff Degracia paid a co-pay of at least $10.00 for each fill of the medication.  After hearing about the recall, Plaintiff Degracia cross referenced the affected NDC numbers with the NDC number of the medications she purchased,

12

and determined that she was prescribed, purchased, and had been consuming one of the
contaminated medications manufactured by Camber and Hetero, and repackaged and distributed
by Legacy.  Plaintiff Degracia originally learned about the recall by receiving a notice from
Walmart.  The Walmart letter, dated February 28, 2019, warned Plaintiff Degracia that there was
an "important voluntary recall concerning this product" due to the detection of "N-Nitroso N-
Methyl 4-amino butyric acid (NMBA), a possible process impurity or contaminant in the active
pharmaceutical ingredient, manufactured by Hetero Labs Limited, Unit I."  The letter further
warned Plaintiff Degracia that she should "contact [her] local Walmart Pharmacy during normal
business hours for return and replacement."  When purchasing her losartan-containing
medications from Defendants, Plaintiff Degracia reviewed the accompanying labels and
disclosures, and understood them as representations and warranties by the manufacturer,
distributor, repackager and pharmacy that the medications were the bioequivalent of the name-
brand medication, and were properly manufactured and free from contaminants and defects.
Plaintiff Degracia relied on these representations and warranties in deciding to purchase her
losartan-containing medications from Defendants, and these representations and warranties were
part of the basis of the bargain, in that she would not have purchased her losartan-containing
medications from Defendants if she had known that they were not, in fact, the bioequivalent of
the name-brand medication and were not properly manufactured and free from contaminants and
defects.  Plaintiff Degracia also understood that in repackaging and distributing these drugs,
Legacy was acting with the knowledge and approval of Camber and Hetero and/or as the agent
of Camber and Hetero.  Plaintiff Degracia also understood that in making the sale, Walmart was
acting with the knowledge and approval of Camber, Hetero and Legacy and/or as the agent of
Camber, Hetero and Legacy.  Plaintiff Degracia also understood that each purchase involved a

direct transaction between herself and Camber, Hetero and Legacy, because her medication came with packaging and other materials prepared by Camber, Hetero and Legacy, including representations and warranties that her medications were bioequivalent to the name-brand medication and properly manufactured and free from contaminants and defects.

22.     Plaintiff William Kolacek is a citizen of Illinois who resides in Apple River, Illinois.  During all relevant time periods, Plaintiff Kolacek was prescribed losartan-containing medication manufactured by Defendants Camber and Hetero, repackaged and distributed by Defendant Legacy, and sold by Walmart.  On June 28, 2018, October 2, 2018, and December 18, 2018, Plaintiff Kolacek purchased losartan-containing medication at a 100 mg dose, bearing NDC number 68645-0579-54.  Each time, Plaintiff Kolacek paid a co-pay of $5.00 for the medication.  After hearing about the recall, Plaintiff Kolacek cross referenced the affected NDC numbers with the NDC number of the medications he purchased, and determined that he was prescribed, purchased, and had been consuming one of the contaminated medications manufactured by Camber and Hetero, repackaged and distributed by Legacy, and sold by Walmart.  When purchasing his losartan-containing medications from Defendants, Plaintiff Kolacek reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, repackager and pharmacy that the medications were bioequivalent to the name-brand medication, and were properly manufactured and free from contaminants and defects.  Plaintiff Kolacek relied on these representations and warranties in deciding to purchase his losartan-containing medications from Defendants, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased his losartan-containing medications from Defendants if he had known that they were not, in fact, properly manufactured and free from contaminants and

defects.  Plaintiff Kolacek also understood that in distributing these drugs, Legacy was acting with the knowledge and approval of Camber and Hetero and/or as the agent of Camber and Hetero.  Plaintiff Kolacek also understood that in making the sale, Walmart was acting with the knowledge and approval of Camber, Hetero and Legacy and/or as the agent of Camber, Hetero and Legacy.  Plaintiff Kolacek also understood that each purchase involved a direct transaction between himself and Camber, Hetero and Legacy, because his medication came with packaging and other materials prepared by Camber, Hetero and Legacy, including representations and warranties that his medications were the bioequivalent of the name-brand medication and were properly manufactured and free from contaminants and defects.

23.     Defendant Camber Pharmaceuticals, Inc. is a corporation organized under the laws of the State of Delaware and maintains its principal place of business at 1031 Centennial Avenue, Piscataway, New Jersey 08854.  Defendant Camber conducts substantial business in New Jersey.  Defendant Camber has been engaged in the manufacturing, sale, and distribution of adulterated generic losartan in the United States, including the state of New Jersey.  Defendant Camber explains on its website that its parent company is Hetero Drugs Limited, based in India.  In fact, Camber's website includes Hetero's logos and intellectual property, demonstrating that Camber acts as Hetero's agent and alter ego in the United States.

24.     Defendant Hetero USA, Inc. is a corporation organized under the laws of the State of Delaware and maintains its principal place of business at 1035 Centennial Avenue, Piscataway, New Jersey 08854.  Hetero is the U.S. branch office of Hetero Drugs Limited.  Defendant Hetero acts as the agent and alter ego of Hetero Drugs Limited in the United States.  Hetero designs, manufactures, markets, distributes, and sells losartan-containing medication in the United States, and in the state of New Jersey.

15

25.     Defendant Legacy Pharmaceuticals Packaging, LLC is a corporation organized under the laws of the State of Delaware and maintains its principal place of business at 13333 Lakefront Drive, Earth City, MO 63045.  Defendant Legacy distributes losartan-containing medication in the United States, and in the state of New Jersey.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below , is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Defendants (a) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of contaminated losartan-containing medications in this District; (b) conduct substantial business in this District; and (c) are subject to personal jurisdiction in this District.  Additionally, Defendants Camber and Hetero maintain their principal place of business in this District.

## CLASS ALLEGATIONS

28.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased losartan-containing medications that are contaminated with NMBA (the "Nationwide Class").  Specifically excluded from the Class are persons who made such purchase for the purpose of resale, Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or

entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

29.    Plaintiffs Roddey and Johnson also seek to represent a subclass of all Class members who purchased losartan-containing medications in Florida (the "Florida Subclass").

30.    Plaintiff Degracia also seeks to represent a subclass of all Class members who purchased losartan-containing medications in California (the "California Subclass").

31.    Plaintiff Kolacek also seeks to represent a subclass of all Class members who purchased losartan-containing medications in Illinois (the "Illinois Subclass").  The Nationwide Class and each Subclass are collectively referred to as the "Class."

32.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

33.    **Numerosity.**  The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of members in the Class.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendants.  More specifically, Defendants maintain databases that contain the following information: (i) the name of each Class member who was prescribed the contaminated medication; (ii) the address of each Class member; and (iii) each Class member's payment information related to the contaminated medication.  Thus, Class members may be identified and notified of the pendency of this action by U.S. Mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

17

34.  **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)  whether the losartan-containing medications manufactured, distributed, and sold by Defendants were in fact contaminated with NMBA, thereby breaching the express and implied warranties made by Defendants and making the medication unfit for human consumption and therefore unfit for its intended purpose;

(b)  whether Defendants knew or should have known that the losartan-containing medications were in fact contaminated with NMBA prior to the recall, thereby constituting fraud and/or fraudulent concealment, and negligence or gross negligence;

(c)  whether Defendants have unlawfully converted money from Plaintiffs and the Class;

(d)  whether Defendants are liable to Plaintiffs and the Class for unjust enrichment;

(e)  whether Defendants are liable to Plaintiffs and the Class for fraudulent concealment;

(f)  whether Defendants are liable to Plaintiffs Roddey and Johnson, and the Florida Subclass, for violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501-201, *et seq.*;

(g)  whether Defendants are liable to Plaintiff Degracia and the California Subclass for violation of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, violation of California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*, and violation of California's False Advertising Law, California Business &

18

Professions Code §§ 17500, *et seq.*;

(h)    whether Defendants are liable to Plaintiff Kolacek and the Illinois Subclass for violation of Illinois' Unfair Practices Act, 805 Ill. Comp. Stat. 505/1, *et seq.*;

(i)    whether Defendants are liable to Plaintiffs for breaches of express and implied warranties;

(j)    whether Plaintiffs and the Class have sustained monetary loss and the proper measure of that loss;

(k)    whether Plaintiffs and the Class are entitled to declaratory and injunctive relief;

(l)    whether Plaintiffs and the Class are entitled to restitution and disgorgement from Defendants; and

(m)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendants' losartan medications are deceptive.

35.    **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that Defendants mass marketed and sold contaminated medications to consumers throughout the United States.  This contamination was present in all of the recalled medications manufactured, distributed, and sold by Defendants.  Therefore, Defendants breached their express and implied warranties to Plaintiffs and Class members by manufacturing, distributing, and selling the contaminated losartan medication.  Plaintiffs' claims are typical to the Class in that they were uniformly harmed in purchasing and consuming the contaminated medications. Plaintiffs' claims are further typical in that Defendants deceived Plaintiffs in the very same manner as they deceived each member of the Class.  Further, there are no defenses available to Defendants that are unique to Plaintiffs.

36.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the

19

interests of the Class.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

37.   **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

38.   In the alternative, the Class may also be certified because:

(a)   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or

impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach Of Express Warranty
### (On Behalf Of The Nationwide Class)

39.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

40.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

41.     Plaintiffs, and each member of the Class, formed a contract with Defendants at the time Plaintiffs and the other Class members purchased the contaminated losartan medications.  The terms of the contract include the promises and affirmations of fact made by Defendants on the contaminated medication's packaging and through marketing and advertising. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs and the members of the Class and Defendants.

42.     Defendants expressly warranted that the losartan-containing medications would be equivalent to the name-brand medication, and would contain only what was stated on the label.  Defendants warranted that the medications would not contain harmful and carcinogenic defects and impurities such as NMBA.  Plaintiffs relied on the express warranties that their medication would be the bioequivalent of the name-brand medication, would contain only what was stated on the label, and that it would not be contaminated with impurities.  These express warranties further formed the basis of the bargain, and are part of the standardized contract

21

between Plaintiffs and the members of the Class and Defendants.

43.     Plaintiffs and the Class performed all conditions precedent to Defendants' liability under this contract when they purchased the contaminated medication.

44.     Defendants breached express warranties about the contaminated medication and their qualities because Defendants' statements about the contaminated medications were false and the contaminated medications do not conform to Defendants' affirmations and promises described above.

45.     Plaintiffs and each of the members of the Class would not have purchased the contaminated medications had they known the true nature of the contaminated medications' ingredients and what the contaminated medications contained (*i.e.*, NMBA).

46.     As a result of Defendants' breaches of express warranty, Plaintiffs and each of the members of the Class have been damaged in the amount of the purchase price of the product and any consequential damages resulting from the purchases.

47.     On May 8, 2019 and May 17, 2019, prior to filing this action, Defendants were served with pre-suit notice letters that complied in all respects with U.C.C. §§ 2-313, 2-607. Plaintiffs' counsel sent Defendants letters advising them that they breached an express warranty and demanded that they cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  True and correct copies of Plaintiffs' counsel's letters are attached hereto as Exhibit A.

## COUNT II
### Breach Of The Implied Warranty Of Merchantability
### (On Behalf Of The Nationwide Class)

48.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

49.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

50.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that the losartan-containing medications (i) contained no NMBA and (ii) are generally recognized as safe for human consumption.

51.      Defendants breached the warranty implied in the contract for the sale of the contaminated losartan-containing medications because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the losartan-containing medications manufactured, distributed, and sold by Defendants were contaminated with carcinogenic and liver toxic NMBA, and as such are not generally recognized as safe for human consumption.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

52.     Plaintiffs and Class members purchased the losartan-containing medications in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

53.     The losartan-containing medications were not altered by Plaintiffs or Class members.

54.     The losartan-containing medications were defective when they left the exclusive control of Defendants.

55.     Defendants knew that the losartan-containing medications would be purchased and used without additional testing by Plaintiffs and Class members.

56.     The contaminated losartan medications were defectively manufactured and unfit

for its intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

57.     As a direct and proximate cause of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class members have been injured and harmed because:  (a) they would not have purchased the losartan-containing medications on the same terms if they knew that the products contained NMBA, and are not generally recognized as safe for human consumption; and (b) the losartan-containing medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

## COUNT III
**Violation Of Florida's Deceptive And Unfair Trade Practices Act,
Fla. Stat. Ann. §§ 501-201, *et seq.*
(On Behalf Of The Florida Subclass)**

58.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiffs Roddey and Johnson bring this claim individually and on behalf of the members of the proposed Florida Subclass against Defendants.

60.     Defendants' advertising, marketing, and sale of the losartan-containing medications constitute activities in and affecting trade and commerce.

61.     Defendants had superior knowledge that their losartan-containing medications were contaminated with NMBA.  As manufacturers and retailers of prescription pharmaceuticals, Defendants had conducted quality testing of its medications.

62.     Further, despite the wave of recalls on August 8, 2018 regarding Camber's valsartan medications from Hetero Labs Limited, Defendants continued to sell losartan-containing medications from overseas API manufacturers contaminated with NMBA, including Hetero Labs Limited.  Defendants continued to manufacture and sell contaminated losartan

24

medications, despite their knowledge that the losartan medications were likely to be contaminated as well.  Defendants also failed to immediately recall all of the affected losartan medication, even after the first wave of losartan recalls were announced.

63.     Defendants' conduct, including their concealment, constitutes unfair and deceptive trade practices, in violation of the Florida's Deceptive and Unfair Trade Practices Act, Fla Stat. Ann. §§ 501-201, *et seq.*

64.     Defendants misrepresented their losartan-containing medications as (i) containing no NMBA and (ii) being generally recognized as safe for human consumption.

65.     Plaintiffs Roddey and Johnson, and the Florida Subclass members, were reasonable consumers acting reasonably under the circumstances when they relied on – and were misled by – Defendants' representations that the losartan-containing medications contained no NMBA and were generally recognized as safe for human consumption.

66.     As a proximate and direct cause of Defendants' violations of FDUTPA, Plaintiffs Roddey and Johnson, and the Florida Subclass members, have been injured and harmed because: (a) they would not have purchased the losartan-containing medications on the same terms if they knew that the products contained NMBA and are not generally recognized as safe for human consumption; and (b) the losartan-containing medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

67.     Accordingly, Defendants are liable to Plaintiffs Roddey and Johnson, and the Florida Subclass, for damages in amounts to be proven at trial, including attorneys' fees and costs.

## COUNT IV
**Violation Of California's Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq.***
**(On Behalf Of The California Subclass – Injunctive Relief Only)**

68.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

69.    Plaintiff Degracia brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

70.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

71.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

72.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), disallows "[a]dvertising goods or services with intent not to sell them as advertised."

73.    Defendants violated this provision by misrepresenting their losartan-containing medications as (i) containing no NMBA and (ii) being generally recognized as safe for human consumption.

74.    Plaintiff Degracia and the California Subclass suffered injuries caused by Defendants because:  (a) they would not have purchased the losartan-containing medications on the same terms if they knew that the products contained NMBA, and are not generally recognized as safe for human consumption; and (b) the losartan-containing medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

26

75.     On or about May 8, 2019 and May 17, 2019, prior to filing this action, CLRA notice letters were served on Defendants which comply in all respects with California Civil Code § 1782(a).  Plaintiff Degracia sent Defendants letters via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff Degracia's letters are attached hereto as Exhibit A.

76.     Wherefore, Plaintiff Degracia seeks injunctive relief for this violation of the CLRA.

**COUNT V**
**Violation Of California's Unfair Competition Law,**
**California Business & Professions Code §§ 17200,** *et seq.*
**(On Behalf Of The California Subclass)**

77.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiff Degracia brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

79.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

80.     Defendants' misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

81.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends

public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

82.     Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about the losartan-containing medications, as discussed above.

83.     Plaintiff Degracia and the California Subclass lost money or property as a result of Defendants' UCL violations because:  (a) they would not have purchased the losartan-containing medications on the same terms if they knew that the products contained NMBA, and are not generally recognized as safe for human consumption; and (b) the losartan-containing medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

**COUNT VI**
**Violation Of California's False Advertising Law,**
**California Business & Professions Code §§ 17500,** *et seq.*
**(On Behalf Of The California Subclass)**

84.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff Degracia brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

86.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

28

87.     Defendants committed acts of false advertising, as defined by §17500, by misrepresenting their losartan-containing medications as (i) containing no NMBA and (ii) being generally recognized as safe for human consumption.

88.     Defendants knew or should have known, through the exercise of reasonable care that their representations about the losartan-containing medications were untrue and misleading.

89.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

90.     Plaintiff Degracia and the California Subclass lost money or property as a result of Defendants' FAL violations because:  (a) they would not have purchased the losartan-containing medications on the same terms if they knew that the products contained NMBA, and are not generally recognized as safe for human consumption; and (b) the losartan-containing medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

## COUNT VII
### Violation Of Illinois' Unfair Practices Act,
### 805 Ill. Comp. Stat. 505/1, *et seq.*
### (On Behalf Of Illinois Subclass)

91.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

92.     Plaintiff Kolacek brings this claim individually and on behalf of the members of the proposed Illinois Subclass against Defendants.

93.     The Illinois Unfair Practices Act, 805 Ill. Comp. Stat. 505/2, *et seq*., prohibits a corporation from engaging in unfair or deceptive trade practices.  The Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or

29

the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act,", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

94.     At all relevant times, Defendants' losartan-containing medications have been available for purchase by consumers through the State of Illinois.

95.     At all relevant times, Defendants have been engage in advertising, offering for sale, selling and/or distributing losartan-containing medications directly or indirectly to the residents of the State of Illinois.

96.     Plaintiff Kolacek and members of the Illinois Subclass have purchased losartan-containing medications for their own personal and/or household use.

97.     At all relevant times, Defendants, in connection with their advertisements, offers for sale, sales and distribution of losartan-containing medications, knowingly and purposefully misrepresented their losartan-containing medications as (i) containing no NMBA and (ii) being generally recognized as safe for human consumption.  Defendants intended that Plaintiff Kolacek and members of the Illinois Subclass would rely upon their misrepresentations, concealments, omissions and/or suppressions so that Plaintiff Kolacek and members of the Illinois Subclass would purchase losartan-containing medications.

98.     The material misrepresentations and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff Kolacek and the general public into believing that the losartan-containing medications (i) contain no NMBA and (ii) are generally recognized as safe for human consumption.

30

99.     Had Plaintiff Kolacek and Illinois Subclass members known the truth about the losartan-containing medications, contrary to Defendants' representations and advertisements, they would not have purchased the medication.

100.     As a result of Defendants' deceptive and unfair acts, Plaintiff Kolacek and Illinois Subclass members have been damaged in the amount of either the purchase price they paid for the losartan-containing medications or the difference between the premium price paid for the losartan-containing medications and the price they would have paid had they known that the medications contain NMBA and are not generally recognized as safe for human consumption.

101.     Defendants' conduct offends established public policy, and is substantially injurious to consumers.

102.     Plaintiff Kolacek and other consumers relied on the false or misleading representations of Defendants to their detriment.

103.     As a result, Plaintiff Kolacek and Illinois Subclass members have been injured by Defendants' unlawful conduct.

## COUNT VIII
### Unjust Enrichment
### (On Behalf Of The Nationwide Class)

104.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

105.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

106.     Plaintiffs and the Class conferred a benefit on Defendants in the form of monies paid to purchase Defendants' contaminated losartan medications.

107.     Defendants voluntarily accepted and retained this benefit.

31

108.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for contaminated medications unfit for human use, it would be unjust and inequitable for the Defendants to retain it without paying the value thereof.

## COUNT IX
### Fraudulent Concealment
### (On Behalf Of The Nationwide Class)

109.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

110.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

111.     Defendants had a duty to disclose material facts to Plaintiffs and the Class given their relationship as contracting parties and intended users of the medication.  Defendants also had a duty to disclose material facts to Plaintiffs and the Class, namely that they were in fact manufacturing, distributing, and selling harmful and contaminated medications unfit for human consumption, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

112.     Defendants possessed knowledge of these material facts.  As manufacturers and retailers of prescription pharmaceuticals, Defendants had conducted quality testing of their medications.

113.     Further, despite the wave of recalls on August 8, 2018 regarding Camber's valsartan medications from Hetero Labs Limited, Defendants continued to sell losartan-containing medications from overseas API manufacturers contaminated with NMBA, including Hetero Labs Limited.  Defendants continued to manufacture and sell contaminated losartan medications, despite their knowledge that the losartan medications were likely to be

contaminated as well.

114.    Defendants failed to discharge their duty to disclose these materials facts.

115.    In so failing to disclose these material facts to Plaintiffs and the Class, Defendants intended to hide from Plaintiffs and the Class that they were purchasing and consuming medications with harmful impurities that were unfit for human use, and thus acted with scienter and/or an intent to defraud.

116.    Plaintiffs and the Class reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the contaminated losartan medications manufactured, distributed, and sold by Defendants had they known it was contaminated with NMBA.

117.    As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiffs and the Class suffered damages in the amount of monies paid for the defective medication.

118.    As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

**COUNT X**
**Fraud**
**(On Behalf Of The Nationwide Class)**

119.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

120.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

121.    As discussed above, Defendants provided Plaintiffs and Class members with false or misleading material information about the losartan medications manufactured, distributed, and sold by Defendants on the medication's packaging, labels, and accompanying documentation.

122.    The misrepresentations and omissions of material fact made by Defendants, upon

33

which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase these contaminated losartan-containing medications.

123.     Defendants knew that the medications contained these harmful impurities.  As manufacturers and retailers of prescription pharmaceuticals, Defendants had conducted quality testing of their medications.

124.     Further, despite the wave of recalls on August 8, 2018 regarding Camber's valsartan medications from Hetero Labs Limited, Defendants continued to sell losartan-containing medications from overseas API manufacturers contaminated with NMBA, including Hetero Labs Limited.  Defendants continued to manufacture and sell contaminated losartan medications, despite their knowledge that the losartan medications were likely to be contaminated as well.

125.     The fraudulent actions of Defendants caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

126.     As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT XI
### Conversion
### (On Behalf Of The Nationwide Class)

127.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

128.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

129.     Plaintiffs and the Class have an ownership right to the monies paid for the contaminated medications manufactured, distributed, and sold by Defendants.

34

130.    Defendants have wrongly asserted dominion over the payments illegally diverted to them for the contaminated medications.  Defendants have done so every time that Plaintiffs and the Class have paid to have their prescriptions filled.

131.    As a direct and proximate cause of Defendants' conversion, Plaintiffs and the Class suffered damages in the amount of the payments made for each time they filled their prescriptions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

B.    For an order declaring that the Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

D.    For compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: May 21, 2019                    Respectfully submitted,

                                       **BURSOR & FISHER, P.A.**

                                       By:    */s/ Andrew J. Obergfell*
                                                    Andrew J. Obergfell

                                       Andrew J. Obergfell
                                       888 Seventh Avenue
                                       New York, NY  10019
                                       Telephone: (646) 837-7150
                                       Facsimile:  (212) 989-9163
                                       Email: aobergfell@bursor.com

                                       *Attorneys for Plaintiffs*

**EXHIBIT A**

# BURSOR & FISHER
## P.A.

888 SEVENTH AVENUE
3ᴿᴰ FLOOR
NEW YORK, NY 10019
www.bursor.com

NEAL J. DECKANT
Tel: 646.837.7165
Fax: 212.989.9163
ndeckant@bursor.com

May 8, 2019

*Via Certified Mail – Return Receipt Requested*

Camber Pharmaceuticals, Inc.
1031 Centennial Avenue
Piscataway, NJ 08854

Hetero USA Inc.
1035 Centennial Avenue
Piscataway, NJ 08854

Legacy Pharmaceutical Packaging, LLC
959 S Coast Drive Suite 325
Costa Mesa, CA 92626

Re:     *Notice and Demand Letter*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Camber Pharmaceuticals, Inc. ("Camber"), Hetero USA Inc. ("Hetero"), and Legacy Pharmaceutical Packaging, LLC ("Legacy") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our clients, Glenn Roddey, Helen Johnson, Alicia Degracia and William Kolacek, and a class of all similarly situated purchasers (the "Class") of contaminated losartan-containing medication manufactured, distributed, and sold by Camber, Hetero, and Legacy. This letter also serves as notice of violation of Florida's Deceptive and Unfair Trade Practices Act, Fla Stat. Ann. §§ 501-201, *et seq.*, violation of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, specifically Cal. Civ. Code § 1770(a)(5), (7), and (9), and violation of Illinois' Unfair Practices Act, 805 Ill. Comp. Stat. 505/1, *et seq.*

Our clients were prescribed and purchased losartan-containing medication manufactured, distributed, and sold by Camber, Hetero and Legacy. Our clients' losartan-containing medications were contaminated with N-Nitroso N-Methyl 4-amino butyric acid ("NMBA"), a carcinogenic and liver-damaging impurity. On February 28, 2019, the U.S. Food & Drug Administration announced a voluntary recall of certain lots of losartan-containing generic medications manufactured by Camber and Hetero. On March 19, 2019, the U.S. Food & Drug Administration announced a voluntary recall of certain lots of losartan-containing medications distributed by Legacy. Both recalls were due to the presence of NMBA in the recalled products.

BURSOR&FISHER
P.A.

This defect rendered the products unusable and unfit for human consumption.  In short, the losartan-containing medications that our client and the Class were purchasing are worthless, as they contained a toxic impurity rendering them unfit for human use.  Camber, Hetero, and Legacy each violated express and implied warranties made to our clients and the Class regarding the quality and safety of the losartan-containing medications they purchased.  *See* U.C.C. *§§* 2-313, 2-314; *see also* Cal. Civ. Code § 1770(a)(5), (7), and (9).

On behalf of our clients and the Class, we hereby demand that Camber, Hetero, and Legacy immediately (1) cease and desist from continuing to sell contaminated losartan-containing medications and (2) make full restitution to all purchasers of the contaminated losartan-containing medications of all purchase money obtained from sales thereof.

We also demand that Camber, Hetero, and Legacy preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the packaging, labeling, and manufacturing process for Camber, Hetero, and Legacy's losartan-containing medications;

2. All documents concerning the design, development, supply, production, extraction, and/or testing of losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

3. All laboratory tests of the losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

4. All documents concerning the pricing, advertising, marketing, and/or sale of losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

5. All communications with customers involving complaints or comments concerning the losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

6. All documents concerning communications with any retailer involved in the marketing or sale of losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

7. All documents concerning communications with federal or state regulators; and

8. All documents concerning the total revenue derived from sales of losartan-containing medication.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.


Very truly yours,

Neal J. Deckant

**BURSOR & FISHER**
P.A.

888 SEVENTH AVENUE
3ʳᴰ FLOOR
NEW YORK, NY 10019
www.bursor.com

NEAL J. DECKANT
Tel: 646.837.7165
Fax: 212.989.9163
ndeckant@bursor.com

May 17, 2019

*Via Certified Mail – Return Receipt Requested*

Camber Pharmaceuticals, Inc.
1031 Centennial Avenue
Piscataway, NJ 08854

Hetero USA Inc.
1035 Centennial Avenue
Piscataway, NJ 08854

Legacy Pharmaceutical Packaging, LLC
13333 Lakefront Dr,
Earth City, MO 63045

Re:    *Notice and Demand Letter*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Camber Pharmaceuticals, Inc. ("Camber"), Hetero USA Inc. ("Hetero"), and Legacy Pharmaceutical Packaging, LLC ("Legacy") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our clients, Glenn Roddey, Helen Johnson, Alicia Degracia and William Kolacek, and a class of all similarly situated purchasers (the "Class") of contaminated losartan-containing medication manufactured, distributed, and sold by Camber, Hetero, and Legacy. This letter also serves as notice of violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501-201, *et seq.*, violation of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, specifically Cal. Civ. Code § 1770(a)(5), (7), and (9), and violation of Illinois' Unfair Practices Act, 805 Ill. Comp. Stat. 505/1, *et seq.*

Our clients were prescribed and purchased losartan-containing medication manufactured, distributed, and sold by Camber, Hetero and Legacy. Our clients' losartan-containing medications were contaminated with N-Nitroso N-Methyl 4-amino butyric acid ("NMBA"), a carcinogenic and liver-damaging impurity. On February 28, 2019, the U.S. Food & Drug Administration announced a voluntary recall of certain lots of losartan-containing generic medications manufactured by Camber and Hetero. On March 19, 2019, the U.S. Food & Drug Administration announced a voluntary recall of certain lots of losartan-containing medications distributed by Legacy. Both recalls were due to the presence of NMBA in the recalled products.

Case 1:19-cv-12763-RBK-JS   Document 1   Filed 05/21/19   Page 42 of 43 PageID: 42

BURSOR&FISHER
P.A.                                                PAGE 2

This defect rendered the products unusable and unfit for human consumption.  In short, the losartan-containing medications that our client and the Class were purchasing are worthless, as they contained a toxic impurity rendering them unfit for human use.  Camber, Hetero, and Legacy each violated express and implied warranties made to our clients and the Class regarding the quality and safety of the losartan-containing medications they purchased.  *See* U.C.C. §§ 2-313, 2-314; *see also* Cal. Civ. Code § 1770(a)(5), (7), and (9).

On behalf of our clients and the Class, we hereby demand that Camber, Hetero, and Legacy immediately (1) cease and desist from continuing to sell contaminated losartan-containing medications and (2) make full restitution to all purchasers of the contaminated losartan-containing medications of all purchase money obtained from sales thereof.

We also demand that Camber, Hetero, and Legacy preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the packaging, labeling, and manufacturing process for Camber, Hetero, and Legacy's losartan-containing medications;

2. All documents concerning the design, development, supply, production, extraction, and/or testing of losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

3. All laboratory tests of the losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

4. All documents concerning the pricing, advertising, marketing, and/or sale of losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

5. All communications with customers involving complaints or comments concerning the losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

6. All documents concerning communications with any retailer involved in the marketing or sale of losartan-containing medications manufactured and distributed by Camber, Hetero, and Legacy;

7. All documents concerning communications with federal or state regulators; and

8. All documents concerning the total revenue derived from sales of losartan-containing medication.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

BURSOR&FISHER
P.A.

 

 

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.


Very truly yours,

Neal J. Deckant